TECHNOCOM BUSINESS SYSTEMS INCORPORATED, Petitioner v. NORTH CAR-
OLINA DEPARTMENT OF REVENUE, Respondent

No. COA11-655

(Filed 21 February 2012)

**Taxation—use tax liability—offset by erroneously collected
sales tax**

The North Carolina Revenue Law under N.C.G.S. § 105-164.41
authorized petitioner to offset its use tax liability with sales taxes
erroneously paid by its customers.

Appeal by respondent from order entered 7 January 2011 by
Judge Ben F. Tennille in Wake County Superior Court. Heard in the
Court of Appeals 9 November 2011.

*Attorney General Roy A. Cooper, by Assistant Attorney General
Tenisha S. Jacobs, for respondent-appellant.*

*The Wooten Law Firm, by Louis E. Wooten, and Everett Gaskins
Hancock LLP, by E.D. Gaskins, Jr., for petitioner-appellee.*

BRYANT, Judge.

Where sales taxes were erroneously collected on optional main-
tenance agreements and paid to the North Carolina Department of
Revenue, pursuant to N.C. Gen. Stat. § 105-164.11(a), Technocom's
use tax liability should be offset by the erroneously collected sales
tax. Therefore, we affirm the ruling of the trial court.

*Facts and Procedural History*

On 26 September 2008, the North Carolina Department of Revenue
("the Department") issued a Notice of Final Determination ("Final
Determination") to Technocom Business Systems, Incorporated,
("Technocom"), a corporation in the business of selling and leasing
office equipment. The Final Determination was the result of an audit
performed on Technocom for the period between 1 June 2002 and
31 August 2005.

In the course of its business, Technocom purchases and uses
parts, supplies, and materials to fulfill its optional maintenance agree-
ments. It is under these maintenance agreements that Technocom
services the equipment that it sells or leases to its customers.
Regarding Technocom's tax liability under these maintenance agree-
ments, the Department made the following conclusion:

North Carolina imposes a State and local use tax on tangible personal property purchased inside or outside the State for storage, use or consumption in this State. . . . Use tax is payable by the person who purchases, leases or rents tangible personal property or who purchases a service.

[Technocom's] use of parts, supplies and materials to fulfill its optional maintenance agreements during the audit period constitutes a taxable use of tangible personal property within the meaning of N.C. Gen. Stat. § 105-164.3(49)[1]. [Technocom] did not pay sales tax or accrue use tax on these items, and the Department has assessed [Technocom] for the appropriate use tax in its proposed assessment and this final determination.

Between 1 June 2002 and 31 August 2005, Technocom collected sales tax on its optional maintenance agreements. The Department held that these agreements were not subject to sales tax because they did not involve services necessary to complete the sale of tangible personal property under N.C. Gen. Stat. § 105-164.3(37)[2]. Technocom stated to the Department that its sales and use tax liability should be offset by the sales tax it collected on its maintenance agreements. In response, the Department stated that it could not refund or credit Technocom pursuant to N.C. Gen. Stat. § 105-164.11(a)[3] because there was no proof Technocom had refunded its customers the sales tax it erroneously collected on its optional maintenance agreements.

On 18 November 2008, Technocom filed a petition for contested case hearing in the Office of Administrative Hearings ("OAH"). Thereafter, on 1 May 2009, Technocom also filed a motion for partial summary judgment and the Department filed a motion for summary judgment. By order entered on 16 November 2009, an administrative law judge granted summary judgment in favor of the Department and sustained the Final Determination. The order concluded that no provision of the Revenue Act allowed Technocom to offset its use tax liability with sales tax it erroneously collected from its customers.

The Department, in a final agency decision, upheld the 16 November 2009 decision of the administrative law judge. On 18 March

---

1. N.C.G.S. § 105-164.3(49) defines "use" under Article 5 of the General Statutes.

2. N.C.G.S. § 105-164.3(37) defines the meaning of "sales price" under Article 5 of the general statutes.

3. N.C.G.S. § 105-164.11(a) is titled, "Excessive and erroneous collections."

2010, Technocom filed a petition for judicial review of the final agency decision in Wake County Superior Court.

Following a hearing held 10 December 2010, the superior court reversed the decision of the OAH and the Final Determination of the Department in a 4 January 2011 order. The superior court, in pertinent part, stated:

> Transactions that do not generate a windfall and that do not result in the unfair treatment of customers are not included in the meaning of "exempt or nontaxable sales" in Section 105-164.11(a). Because the transactions at issue here are not "exempt or nontaxable sales," Section 105-164.11(a) is not applicable. The general provision contained in Section 105-164.41 governs the outcome, and Technocom is entitled to a credit against the sales tax paid to the Department during the audit period.

The superior court remanded the case to the OAH with instructions to grant partial summary judgment in favor of Technocom, "leaving open the amount of the tax credit to which [Technocom] is entitled" for the OAH's determination. Pursuant to the superior court's order, the administrative law judge entered an order on 3 March 2011 stating the following:

> 1. [Technocom] is GRANTED partial summary judgment on the following legal issue:
>
> Whether the North Carolina Revenue Laws authorize Technocom to offset its use tax liability on the parts and supplies it provided to customers . . . with the sales taxes based on the sales of those same Service Agreements it had previously remitted in error to the Department[.]
>
> 2. Petitioner is entitled to a tax credit of $192,457.33 on the parts and supplies [Technocom] previously charged, collected and remitted North Carolina sales tax on when it provided such items to its customers . . . if the Order entered in this matter on 4 January 2011 is affirmed on appeal.
>
> 3. No further proceedings at OAH are required in this matter as there is no dispute about the amount of credit [Technocom] would be entitled to if the Order is affirmed on appeal.

The Department appeals the superior court's 4 January 2011 order.

_____

The sole issue on appeal is whether the North Carolina Revenue Laws authorize Technocom to offset its use tax liability with sales taxes erroneously paid by its customers. The Department argues that no provision in the North Carolina Sales and Use Tax Act ("Act"), N.C. Gen. Stat. §§ 105-164.1 *et seq.*, permits Technocom to claim such a credit against its use tax liability.

> An appellate court reviewing a superior court order regarding an agency decision examines the trial court's order for error of law. The process has been described as a twofold task: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly. When, as here, a petitioner contends the [superior court's] decision was based on an error of law, de novo review is proper.

*Holly Ridge Assocs., LLC v. N.C. Dep't of Env't & Natural Res.*, 361 N.C. 531, 535, 648 S.E.2d 830, 834 (2007) (internal quotation marks and citations omitted).

Because this appeal centers on a close reading of the Act, we must seek "[t]he principal goal of statutory construction [which] is to accomplish the legislative intent." *Lenox, Inc. v. Tolson*, 353 N.C. 659, 664, 548 S.E.2d 513, 517 (2001) (citation omitted). "If the language of a statute is clear, the court must implement the statute according to the plain meaning of its terms so long as it is reasonable to do so." *Id.*

> [T]he Act, with certain exceptions and in pertinent part, imposes upon persons engaged in the business of selling tangible personal property at retail in this state a state sales tax at a rate of three percent of the sales price of each item sold. The Act also imposes a complementary state use tax "upon the storage, use or consumption in this state of tangible personal property purchased within and without this state for storage, use or consumption within this state" at a rate of three percent of the cost of such property "when the same is not sold but used, consumed, distributed or stored for use or consumption in this State. . . ."

*In re Assessment of Additional N.C. & Orange County Use Taxes, etc.*, 312 N.C. 211, 214, 322 S.E.2d 155, 158 (1984) (citation omitted).

The first purpose of the Act is to generate revenue for the state. *Id.* This is accomplished by a sales tax which is

> imposed upon the retail merchant as a privilege tax for the right to engage in that business. The tax is, however, designed to be passed on to the consumer. The second purpose of the sales and use tax scheme is to equalize the tax burden on all state residents. This is achieved through imposition of the use tax in certain situations where the sales tax is not applicable.

*Id.* at 214-15, 322 S.E.2d at 158.

"While a sales tax and a use tax in many instances may bring about the same result, they are different in conception." *Colonial Pipeline Co. v. Clayton*, 275 N.C. 215, 222, 166 S.E.2d 671, 676 (1969). "A sales tax is assessed on the purchase price of property and is imposed at the time of sale. A use tax is assessed on the storage, use or consumption of property *and takes ef[f]ect only after such use begins.*" *Id.* at 223, 166 S.E.2d at 677.

The General Assembly has defined a "sale" as a "transfer for consideration of title or possession of tangible personal property . . . for consideration of a service." N.C.G.S. § 105-164.3(36) (2009). A sale may include such things as a "lease or rental" or a "transaction in which the possession of property is transferred but the seller retains title or security for the payment of the consideration." *Id.* The sales tax collected on the "sales price" includes the "total amount or consideration for which tangible personal property . . . or services are sold, leased, or rented." N.C.G.S. § 105-164.3(37) (2009). A sales price includes "charges by the retailer for any services *necessary* to complete the sale." *Id.* (emphasis added). A "use", on the other hand, is the "exercise of any right, power, or dominion whatsoever over tangible personal property . . . by the purchaser of the property or service." N.C.G.S. § 105-164.3(49) (2009).

In the instant case, Technócom does not dispute that it improperly collected sales tax on amounts charged under its optional maintenance agreements and that Technocom should have paid a use tax in connection with the parts and supplies it provided under those agreements. However, it does argue that pursuant to N.C. Gen. Stat. § 105-164.41, the Department is required to issue Technocom a credit against "any" tax. Technocom asserts that the Department should credit the sales taxes made in error against the use tax assessment levied by the Department, particularly, whereas here, the Department

seeks to treat the transactions at issue as a "use" for tax purposes but as a "sale" for refund purposes.

N.C.G.S. § 105-164.41, titled "Excess payments; refunds[,]" states that "[if] it appears that an amount of tax has been paid in excess of that properly due, then the amount in excess shall be credited against any tax or installment thereof then due from the taxpayer[.]" N.C.G.S. § 105-164.41 (2009). On the other hand, N.C. Gen. Stat. § 105-164.11 (2009), titled "Excessive and erroneous collections[,]" provides guidance in situations where excessive and erroneous collections are made and, specifically, prohibits the relief sought by Technocom. N.C.G.S. § 105-164.11 provides the following:

> When the tax collected for any period is in excess of the total amount that should have been collected, the total amount collected must be paid over to the Secretary. When tax is collected for any period on *exempt or nontaxable sales* the tax erroneously collected shall be remitted to the Secretary and no refund shall be made to a taxpayer unless the purchaser has received credit for or has been refunded the amount of tax erroneously charged.

N.C.G.S. § 105-164.11 (2009) (emphasis added).

The rules of "[s]tatutory construction require[] that a more specific statute controls over a statute of general applicability." *Stewart v. Johnston County Bd. Of Educ.*, 129 N.C. App. 108, 110, 498 S.E.2d 382, 384 (1998). "When two statutes apparently overlap, it is well established that the statute special and particular shall control over the statute general in nature, even if the general statute is more recent, unless it clearly appears that the legislature intended the general statute to control." *Trustees of Rowan Technical College v. J. Hyatt Associates, Inc.*, 313 N.C. 230, 238, 328 S.E.2d 274, 279 (1985) (citation omitted).

N.C.G.S. § 105-164.41 is the more general statute, applying to any situation where the amount of tax has been paid in excess of that properly due. However, although N.C.G.S. § 105-164.11 is a more specific and particular statute, it does not apply to the instant case, as the Department would have us hold. N.C.G.S. § 105-164.11 only applies to taxes collected on "exempt or nontaxable sales." As previously stated, a sale is the transfer of tangible personal property for a consideration to be paid. In its February 2010 Final Agency Decision, the Department concluded that the optional maintenance agreements

at issue constituted a taxable use of tangible personal property within the meaning of N.C.G.S. § 105-164.3(49) and not a sale. Accordingly, the Department held that the agreements were subject to use taxes and not sales taxes. Therefore, N.C.G.S. § 105-164.11 does not apply. We hold that the general provision in N.C.G.S. § 105-164.41 governs the outcome, entitling Technocom to a credit against the sales tax paid to the Department during the audit period. Based on the foregoing, the order of the trial court is affirmed.

Affirmed.

Judges ELMORE and STEPHENS concur.