IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-661

Filed 18 June 2025

North Carolina State Bar Disciplinary Hearing Commission No. 22 DHC 21

THE NORTH CAROLINA STATE BAR, Plaintiff,

v.

MARTIN MUSINGUZI, Attorney, Defendant.

Appeal by defendant from orders entered 11 January 2024 and 10 June 2024 by the North Carolina State Bar Disciplinary Hearing Commission. Heard in the Court of Appeals 29 January 2025.

> *The North Carolina State Bar, by Deputy Counsel Robert W. Weston and Counsel Carmen H. Bannon, for plaintiff-appellee.*
>
> *Dowling PLLC, by Troy D. Shelton, for defendant-appellant.*

STROUD, Judge.

Defendant appeals from an Order of Discipline and an Order on Motion for Relief from Judgment and Lifting Stay from the North Carolina State Bar Disciplinary Hearing Commission. Defendant is an attorney licensed by the State of New York who practices in the federal immigration court in North Carolina, but he is not and has never been admitted to practice in the North Carolina courts. Based on the plain language of North Carolina General Statute Section 84-28, which grants "disciplinary jurisdiction" to the Disciplinary Hearing Commission over "[a]ny

attorney admitted to practice law in this State[,]" the Disciplinary Hearing Commission did not have subject matter jurisdiction to issue an Order of Discipline of Defendant, so we reverse the Order of Discipline and the Order on Motion for Relief from Judgment and Lifting Stay. N.C. Gen. Stat. § 84-28 (2023).

## I.   Background

The facts in this case are not in dispute. Defendant is a licensed attorney who is a member of the New York Bar. He is not and has never been a member of the North Carolina State Bar ("State Bar"). He lives in North Carolina, maintains a law office in Charlotte, North Carolina, and represents clients in the federal immigration court in Charlotte. His practice is limited to federal immigration law and Defendant does not appear in North Carolina state courts, although his clientele in the immigration court "regularly included North Carolina clients." Defendant's law practice maintained a trust account in North Carolina with Bank of America and as required by North Carolina Rule of Professional Conduct 1.15-2, this trust account was registered with the North Carolina Interest on Lawyer's Trust Account ("IOLTA") program.[1] In North Carolina, all trust accounts used by attorneys must be registered with IOLTA. *See* 27 N.C. Admin. Code 1D.1316. If a lawyer's trust

---

[1] IOLTA was created by order of the Supreme Court of North Carolina on 23 June 1983 and was implemented by the North Carolina Bar Association in January 1984. *See* Amendments to the Code of Professional Responsibility, 307 N.C. 707, 716-20. It is currently administered by the Board of Trustees of the North Carolina State Bar Plan for Interest on Lawyers' Trust Accounts, which is a standing committee of the North Carolina State Bar Council. *See* 27 N.C. Admin. Code 1D.1302.

account has insufficient funds, the bank at which the account is maintained is required by law to report the insufficient funds to the State Bar. *See* N.C. R. Pro. Conduct 1.15-2(f).

In 2017, Bank of America sent the State Bar notices of insufficient funds in Defendant's trust account. The notices of insufficient funds resulted from Defendant's misappropriation of funds during his representation of clients A.B. and P.M., both North Carolina residents.[2] Ultimately, the State Bar "opened grievance file number 17G0374 against [Defendant] after receiving" the notice of insufficient funds. On 27 June 2017, the State Bar served Defendant with a "Letter of Notice in 17G0374" and he responded to the Letter of Notice. The Disciplinary Hearing Commission ("DHC") found that as the investigation progressed, Defendant

> continued to acknowledge both the State Bar's disciplinary jurisdiction over him and his obligation to comply with the North Carolina Rules of Professional Conduct, including a Consent Order of Preliminary Injunction he executed in an action the State Bar brought against him in Wake County Superior Court, bearing the caption *The North Carolina State Bar v. [Defendant]*, File No. 17-CVS-15617.

The "consent injunction enjoined [Defendant] from handling entrusted funds." The State Bar also reported Defendant's trust account issue to New York's First Judicial Department Attorney Grievance Committee ("Attorney Grievance Committee"). On 26 September 2019, the Attorney Grievance Committee sent a letter to the State Bar

---

[2] The State Bar does not contend that it has disciplinary jurisdiction over Defendant based on his maintenance of an IOLTA account.

stating it had "completed its investigation" and "issued a Letter of Admonition" to Defendant. Later, Defendant "stopped participating in the . . . State Bar disciplinary process at all."

On 19 July 2022, the State Bar filed a complaint against Defendant with the Disciplinary Hearing Commission ("DHC"). The State Bar alleged Defendant failed to respond to its grievance and requested Defendant be disciplined by the DHC under North Carolina General Statute Section 84-28. Defendant did not respond to the complaint and the State Bar eventually "moved for entry of default against [Defendant], which [the DHC] entered" on 9 May 2023. The State Bar filed an amended motion for entry of default on 22 August 2023 and an amended entry of default was entered 23 August 2023. On 11 January 2024, the DHC entered an Order of Discipline ordering that "Defendant, Martin Musinguzi, is hereby DISBARRED from the practice of law." The Order of Discipline also required Defendant to "comply with all provisions of 27 N.C. Admin. Code 1B.0128" and to take other actions to terminate his law practice.

On 2 February 2024, Defendant filed a Motion for Relief from Judgment under Rules 55(d) and 60(b)(4) of the North Carolina Rules of Civil Procedure alleging that the State Bar and the DHC "lack jurisdiction and authority to discipline someone who is not a member of the . . . State Bar." On 5 February 2024, Defendant filed a notice of appeal from the Order of Discipline to this Court. On 12 February 2024, the parties filed a Joint Motion to Stay the Order of Discipline pending consideration of

Defendant's Motion for Relief from Judgment. On the same date, this Court entered an order holding the appeal in abeyance and remanding the matter to the DHC to consider the Motion for Relief from Judgment and certify its order to the Court of Appeals.[3]

After hearing on the Motion for Relief from Judgment, the DHC entered an Order on Motion for Relief from Judgment and Lifting Stay ("Order on Motion for Relief") on 10 June 2024. The DHC concluded that "[a]s a licensed lawyer practicing in North Carolina, [Defendant] is subject to the disciplinary jurisdiction of the . . . State Bar under N.C. Gen. Stat. § 84-23(a) and Rule 8.5(a) of the Rules of Professional Conduct, and this Hearing Panel has subject matter jurisdiction over this matter." The Order on Motion for Relief did *not* amend the Order of Discipline, but stated in the findings of fact that Defendant was

> incorrect to interpret the directions in paragraphs 3 through 7 of the decretal section of the Order of Discipline as requiring him to wind down any portion of his presentation and practice in North Carolina that is permitted by federal law before federal courts. Paragraphs 3 through 7 of the decretal section of the Order of Discipline only apply to any portion of his presentation and practice in North Carolina not permitted by federal law before federal courts.

---

[3] This Court's order required DHC to consider the motion under the procedure established in *Bell v. Martin*, 43 N.C. App. 134, 142, 258 S.E.2d 403, 409 (1979), *rev'd on other grounds*, 299 N.C. 715, 264 S.E.2d 101 (1980), which states "[t]his procedure allows the trial court to rule in the first instance on the Rule 60(b) motion and permits the appellate court to review the trial court's decision on such motion at the same time it considers other assignments of error."

Defendant filed written notice of appeal of the DHC's Order on Motion for Relief that same day.

## II. Jurisdiction

The Order of Discipline was entered on 11 January 2024 and Defendant filed written notice of appeal on 5 February 2024. The Order on Motion for Relief was entered on 10 November 2024 and Defendant filed written notice of appeal that same day.

Under North Carolina General Statute Section 7A-29(a), governing "[a]ppeals of right from certain administrative agencies[,]" a defendant may appeal "any final order or decision of . . . the North Carolina State Bar under G.S. 84-28 . . . appeal as of right lies directly to the Court of Appeals." N.C. Gen. Stat. § 7A-29(a) (2023). Under Rule 18(b)(2) of our Rules of Appellate Procedure,

> [a]ny party to the proceeding may appeal from a final decision of an administrative tribunal to the appropriate court of the appellate division for alleged errors of law by filing and serving a notice of appeal within thirty days after receipt of a copy of the final decision of the administrative tribunal.

N.C. R. App. P. 18(b)(2). Thus, Defendant properly filed his notice of appeal of the Order of Discipline within 30 days of its entry in compliance with North Carolina General Statute Section 7A-29(a) and North Carolina Rule of Appellate Procedure 18(b)(2). Defendant then filed a Joint Motion to Stay the Order of Discipline on 12 February 2024 pursuant to this Court's decision in *Bell v. Martin*, 43 N.C. App. 134,

142, 258 S.E.2d 403, 409 (1979), *rev'd on other grounds*, 299 N.C. 715, 264 S.E.2d 101 (1980).

As Defendant filed timely written notice of appeal of the Order of Discipline and of the Order on Motion for Relief, this Court has jurisdiction to hear Defendant's appeal of each order.

## III.   Analysis

Defendant contends that the State Bar does not have disciplinary jurisdiction over him because he is not a member of the State Bar and has not been "otherwise admitted to practice in North Carolina." Defendant argues the DHC does not have subject matter jurisdiction over him for three reasons: (1) "jurisdiction is barred by the disciplinary jurisdiction statute[,]" North Carolina General Statute Section 84-28; (2) "jurisdiction is barred by the Supreme Court's decision in" *Disciplinary Hearing Commission v. Frazier,* 354 N.C. 555, 556 S.E.2d 262 (2001); and (3) "jurisdiction is barred by the [State] Bar's own rules." (Capitalization altered.) Because North Carolina General Statute Section 84-28 limits the DHC's disciplinary jurisdiction to attorneys admitted to practice in this State, we reverse the DHC's Order of Discipline and Order on Motion for Relief.

## A. Standard of Review

"[W]hen the pertinent inquiry on appeal is based on a question of law—such as whether the trial court properly interpreted and applied the language of a statute—we conduct de novo review." *Da Silva v. WakeMed*, 375 N.C. 1, 5, 846 S.E.2d 634, 638

(2020) (footnote omitted). Further, "[w]hether a trial court has subject-matter jurisdiction is a question of law, reviewed *de novo* on appeal." *Hillard v. Hillard*, 223 N.C. App. 20, 22, 733 S.E.2d 176, 179 (2012) (citation and quotation marks omitted). "When conducting de novo review, this Court considers the matter anew and freely substitutes its own judgment for that of the trial court." *Bracey v. Murdock*, 286 N.C. App. 191, 193, 880 S.E.2d 707, 709 (2022) (citation and quotation marks omitted).

To resolve the question of the State Bar's subject matter jurisdiction over Defendant, we must consider several statutes:

> Under our canons of statutory interpretation, where the language of a statute is clear, the courts must give the statute its plain meaning. However, where a statute is ambiguous or unclear as to its meaning, the courts must interpret the statute to give effect to the legislative intent. Additionally, although the interpretation of a statute by an agency created to administer that statute is traditionally accorded some deference by appellate courts, those interpretations are not binding. Our Supreme Court has also stated that
>
> > it is ultimately the duty of the courts to construe administrative statutes and they may not defer that responsibility to the agency charged with administering those statutes. While the interpretation of the agency responsible for their administration may be helpful and entitled to great consideration when the Court is called upon to construe the statutes, that interpretation is not controlling. It is the Court and not the agency that is the final interpreter of legislation.

*N.C. State Bar v. Brewer*, 183 N.C. App. 229, 236, 644 S.E.2d 573, 577 (2007) (citations, quotation marks, and brackets omitted). If two or more statutes apply to

the same "matter or subject," we must also construe the statutes together: "It is, of course, a fundamental canon of statutory construction that statutes which are *in pari materia, i.e.,* which relate or are applicable to the same matter or subject, must be construed together in order to ascertain legislative intent." *Morris v. Rodeberg*, 385 N.C. 405, 409, 895 S.E.2d 328, 331 (2023) (citation, quotation marks, and ellipses omitted).

**B. Statutory Basis for Disciplinary Jurisdiction of the State Bar**

Defendant first argues "jurisdiction is barred by the disciplinary jurisdiction statute[,]" North Carolina General Statute Section 84-28. (Capitalization altered.) Specifically, Defendant contends North Carolina General Statute Section 84-28 grants the State Bar "disciplinary jurisdiction" only as to "attorneys admitted to practice in North Carolina," and since he has not been admitted to practice in North Carolina, the State Bar has no jurisdiction to disbar him. The State Bar argues the General Assembly has granted it disciplinary jurisdiction over all "licensed lawyers" who practice in North Carolina, including Defendant, who is licensed as a lawyer by the State of New York, under North Carolina General Statute Section 84-23(a) and Rule 8.5 of the Rules of Professional Conduct. Specifically, the State Bar contends that North Carolina General Statute Section 84-23(a) grants it the authority to "regulate the professional conduct of licensed lawyers," and under Rule 8.5(a), even a lawyer not admitted in North Carolina "is also subject to the disciplinary authority of North Carolina if the lawyer renders or offers to render any legal services in North

Carolina."

### 1. *Jurisdiction cannot be Conferred by Consent*

We first note that the State Bar states in its brief that Defendant *"acknowledged the State Bar's disciplinary jurisdiction and his obligation to comply with the rules."* (Emphasis in original.) The State Bar also concedes "a litigant cannot consent to subject matter jurisdiction" but then contends Defendant's "extensive history of recognizing the State Bar's jurisdiction over his practice . . . is a significant data point demonstrating the correct, most reasonable interpretation of Chapter 84." But Defendant's initial belief about subject matter jurisdiction is simply not a relevant "data point." It is well-established that "[p]arties cannot stipulate to give a court subject matter jurisdiction where no such jurisdiction exists. A lack of jurisdiction of the subject matter may always be raised by a party, or the court may raise such defect on its own initiative." *Conner Bros. Mach. Co., Inc. v. Rogers*, 177 N.C. App. 560, 561, 629 S.E.2d 344, 345 (2006) (citations and quotation marks omitted). Thus, even if Defendant first believed the DHC had subject matter jurisdiction over this matter, his belief is immaterial and we will not consider it in this analysis. Likewise, the State Bar's interpretation of North Carolina General Statute Sections 84-23 and 84-28 and its determination that Section 84-23 grants it subject matter jurisdiction is also of limited relevance. "While the interpretation of the agency responsible for [the administration of a statute] may be helpful and entitled to great consideration when the Court is called upon to construe the statutes,

that interpretation is not controlling. It is the Court and not the agency that is the final interpreter of legislation." *Brewer*, 183 N.C. App. at 236, 644 S.E.2d at 577 (citation omitted).

### 2. *North Carolina General Statute Sections 84-23 and 84-28*

Because we must construe statutes *in pari materia*, we consider North Carolina General Statute Sections 84-23 and 84-28 in the context of Chapter 84 of the North Carolina General Statutes, which is entitled "Attorneys-at-Law." N.C. Gen. Stat. Ch. 84 (2023). Article 4, entitled "North Carolina State Bar," establishes the State Bar as "an Agency of the State" in Section 84-15 and the rest of the Article sets out provisions addressing the membership in the State Bar and the organization, governance, structure, powers, and duties of the State Bar. N.C. Gen. Stat. § 84-15 (2023); *see generally* N.C. Gen. Stat. Ch. 84, art. 4.

North Carolina General Statute Section 84-16, entitled "[m]embership and privileges[,]" defines the "membership" of the State Bar. N.C. Gen. Stat. § 84-16 (2023). There are two classes of members, active and inactive:

> The active members shall be all persons who have obtained a license or certificate, entitling them to practice law in the State of North Carolina, who have paid the membership dues specified, and who have satisfied all other obligations of membership. No person other than a member of the North Carolina State Bar shall practice in any court of the State except foreign attorneys as provided by statute and natural persons representing themselves.

*Id.*

The governing body of the State Bar is the Council, which is created by North Carolina General Statute Section 84-17:

> The government of the North Carolina State Bar is vested in a council of the North Carolina State Bar referred to in this Chapter as the "Council." . . . . The Council shall be competent to exercise the entire powers of the North Carolina State Bar in respect of the interpretation and administration of this Article, the borrowing of money, the acquisition, lease, sale, or mortgage of property, real or personal, the seeking of amendments to this Chapter, and all other matters.

N.C. Gen. Stat. § 84-17 (2023).

The powers of the Council are established by North Carolina General Statute Section 84-23:

> (a) The Council is vested, as an agency of the State, *with the authority to regulate the professional conduct of licensed lawyers and State Bar certified paralegals.* Among other powers, the Council shall administer this Article; take actions that are necessary to ensure the competence of lawyers and State Bar certified paralegals; formulate and adopt rules of professional ethics and conduct; investigate and prosecute matters of professional misconduct; expunge disciplinary actions; grant or deny petitions for reinstatement; resolve questions pertaining to membership status; arbitrate disputes concerning legal fees; certify legal specialists and paralegals and charge fees to applicants and participants necessary to administer these certification programs; determine whether a member is disabled; maintain an annual registry of interstate and international law firms doing business in this State; and formulate and adopt procedures for accomplishing these purposes. The Council may do all things necessary in the furtherance of the purposes of this Article that are not otherwise prohibited by law.

N.C. Gen. Stat. § 84-23(a) (2024) (emphasis added).

North Carolina General Statute Section 84-28, entitled "[d]iscipline and [d]isbarment" sets out the disciplinary jurisdiction of the Council and procedures for disciplinary actions against "respondent attorney[s.]" N.C. Gen. Stat. § 84-28. Subsection (a) provides that "[a]*ny attorney admitted to practice law in this State* is subject to the disciplinary jurisdiction of the Council *under such rules and procedures as the Council shall adopt as provided in G.S. 84-23*." N.C. Gen. Stat. § 84-28(a) (emphasis added). Therefore, Section 84-23 grants the Council "the authority to regulate the professional conduct of licensed lawyers and State Bar certified paralegals," including the authority to "adopt rules of professional ethics and conduct" and to "investigate and prosecute matters of professional misconduct," while Section 84-28 grants the Council "disciplinary jurisdiction" over "[a]ny attorney admitted to practice law in this State" to enforce the rules the Council is empowered to adopt under Section 84-23. N.C. Gen. Stat. § 84-23(a); N.C. Gen. Stat. § 84-28(a). Thus, State Bar has "disciplinary jurisdiction" over "[a]ny attorney admitted to practice law in this State" to enforce the rules adopted in accord with Section 84-23.

Subsection 84-28(b) confirms that the disciplinary jurisdiction is limited to "[a]ny attorney admitted to practice law in this State" by identifying the specific "acts or omissions *by a member of the North Carolina State Bar* or any attorney admitted

for limited practice under G.S. 84-4.1[4]" that "shall constitute misconduct and shall be grounds for discipline[.]" N.C. Gen. Stat. § 84-28(a), (b) (emphasis added). Thus, the plain language of North Carolina General Statute Section 84-28(b) limits the "grounds for discipline" to "acts of omissions by a member of the North Carolina State Bar or any attorney admitted for limited practice under G.S. 84-4.1." N.C. Gen. Stat. § 84-28(b). Subsection 84-28(c) then outlines the types of discipline available, ranging from the least severe discipline, admonition, to the most severe, disbarment. N.C. Gen. Stat. § 84-28(c).

In interpreting statutory language, "[w]e begin with the text of the statute and, if that text is clear and unambiguous, we conclude that the legislature intended the statute to be implemented according to the plain meaning of its terms." *Arter v. Orange Cnty.*, 386 N.C. 352, 354, 904 S.E.2d 715, 717 (2024) (citation and quotation marks omitted). If two statutes "apparently overlap," the more particular statute controls over the more general statute, unless it is clear that the General Assembly intended for the more general statute to be controlling:

> The rules of statutory construction require that a more specific statute controls over a statute of general applicability. When two statutes apparently overlap, it is well established that the statute special and particular shall control over the statute general in nature, even if the general statute is more recent, unless it clearly appears that the legislature intended the general statute to control.

---

[4] North Carolina General Statute Section 84-4.1 authorizes *pro hac vice* limited practice and does not apply to this case. *See* N.C. Gen. Stat. § 84-4.1 (2023).

*Technocom Bus. Sys. Inc., v. N.C. Dep't of Revenue*, 219 N.C. App. 207, 212, 723 S.E.2d 151, 155 (2012) (citations, quotation marks, and brackets omitted).

In comparing North Carolina General Statute Sections 84-23 and 84-28, the State Bar contends that Section 84-23 addresses its "authority to regulate the professional conduct of licensed lawyers and State Bar certified paralegals" while Section 84-28 specifically addresses the "disciplinary jurisdiction of the Council" over "[a]ny attorney admitted to practice law in this State[.]" N.C. Gen. Stat. § 84-23(a); N.C. Gen. Stat. § 84-28(a). The State Bar contends that Section 84-23 differs from Section 84-28 since Section 84-23 is broader in scope because it applies to "licensed lawyers" while Section 84-28 is more limited and applies to "[a]ny attorney admitted to practice law in this State[.]" N.C. Gen. Stat. § 84-23(a); N.C. Gen. Stat. § 84-28(a). The Order on Motion for Relief concluded that the State Bar has subject matter jurisdiction over Defendant based on North Carolina General Statute Section 84-23(a) and Rule 8.5(a) of the Rules of Professional conduct because Defendant is a "licensed lawyer" who has an office in Charlotte and represents clients who live in North Carolina, although his practice is limited to federal immigration court. But the plain language of the more specific statute, Section 84-28, read in conjunction with Section 84-23, grants the State Bar disciplinary jurisdiction only over "attorney[s] admitted to practice law in this State[.]" N.C. Gen. Stat. § 84-28.

The plain language of Section 84-23 is a general grant of authority for the Council to perform many duties. *See* N.C. Gen. Stat. § 84-23. The plain language of

Section 84-28 is a specific grant of "disciplinary jurisdiction" which only applies to "[a]ny attorney admitted to practice law in this State[.]" N.C. Gen. Stat. § 84-28. And if we read the statutes *in pari materia*, Section 84-23 is consistent with Section 84-28. Both statutes must be read in the context of Article 4, which deals with the State Bar of North Carolina and regulation of lawyers *licensed* by North Carolina. N.C. Gen. Stat. Ch. 84, art. 4. For example, it would be absurd to interpret Section 84-23 as requiring the State Bar to "take actions that are necessary to ensure the competence of lawyers" who do not practice in North Carolina or who are licensed only in another State. N.C. Gen. Stat. § 84-23. And lawyers licensed by another state, such as Defendant, are not required to obtain continuing legal education, which is required for lawyers licensed in North Carolina.[5] 27 N.C. Admin. Code 1D.1501 ("Except as provided herein, these rules shall apply to every active member licensed by the North Carolina State Bar."). Nor does the State Bar purport to "certify legal specialists and paralegals" who practice in the courts of another state or exclusively in the federal courts; to reinstate lawyers disbarred in another jurisdiction; to "expunge disciplinary actions" against a lawyer in another jurisdiction; or to "resolve questions pertaining to membership status" of a lawyer who is a member of the bar of another state. N.C. Gen. Stat. § 84-23. All these situations may involve a "licensed lawyer," if we define this as a lawyer licensed to practice law in any jurisdiction, but

---

[5] The Rules of Professional Conduct require only "active member[s]" who are "licensed by the North Carolina State Bar" to obtain Continuing Legal Education hours. 27 N.C. Admin. Code 1D.1501.

Section 84-23 and Section 84-28 together grant the State Bar regulatory powers only over "licensed lawyers" who are licensed in North Carolina. Under the State Bar's interpretation of Section 84-23 as granting disciplinary jurisdiction applicable to "licensed lawyers" in general, the State Bar would theoretically have the authority to discipline or disbar any "licensed lawyer" admitted to the bar in any state or jurisdiction, not just North Carolina, but its other powers and duties granted by Section 84-23 would be limited to lawyers (and paralegals) who are licensed in North Carolina. So although the phrases "licensed lawyer" and "attorney admitted to practice law in this State" are different, the meaning is the same in the context of these two statutes. N.C. Gen. Stat. § 84-23(a); N.C. Gen. Stat. § 84-28(a). Thus, in determining disciplinary jurisdiction, Section 84-28 controls over Section 84-23 since Section 84-28 is the more specific statute. *See Technocom Bus. Sys. Inc.,* 219 N.C. App. at 212, 723 S.E.2d at 155.

The State Bar does not seriously dispute its lack of authority over lawyers who practice only in the federal courts, as is indicated by its "clarification" in the Order on Motion for Relief. In its brief to the DHC regarding the Motion for Relief from Judgment, the State Bar noted that it

> does not construe the Order of Discipline's reference to § .0128 to require [Defendant to shut down his law practice]. Rather, the State Bar construes this reference as a requirement that [Defendant] comply with § .0128 as to any portion of his North Carolina practice not confined to the practice of law before federal immigration courts, as the State Bar cannot prohibit the federal immigration courts

from permitting a lawyer (or non-lawyer, such as an accredited representative) from appearing before them. To the extent the Panel feels this is not clearly expressed in the Order of Discipline, the State Bar asks for an appropriate conclusion of law or amendment clarifying the same.

The original Order of Discipline ordered that Defendant "is hereby DISBARRED from the practice of law." Despite the State Bar's request, the DHC's Order on Motion for Relief did not amend the original Order of Disbarment, nor did it include a conclusion of law or decree provision limiting the effect of the Order of Discipline. Instead, the Order on Motion for Relief includes a *finding of fact* addressing Defendant's erroneous "interpretation" of the Order of Discipline. It states that Defendant

> is incorrect to interpret the directions in paragraphs 3 through 7 of the decretal section of the order of discipline as requiring him to wind down any portion of his presentation and practice in North Carolina that is permitted by federal law before federal courts. Paragraphs 3 through 7 of the decretal section of the Order of Discipline only apply to any portion of his presentation and practice in North Carolina not permitted by federal law before federal courts.

Defendant's brief also notes the DHC's agreement regarding its lack of authority over lawyers engaged only in practice in federal courts:

> The State Bar recognizes attorneys can appear before federal immigration tribunals in North Carolina without a North Carolina law license. N.C. State Bar, *Reporting and Preventing the Unauthorized Practice of Law*, https://dub.sh/xyWv0MO. Federal law confirms that an attorney licensed to practice law in any state may appear

before these federal agencies and practice federal immigration law. See 8 C.F.R. § 1001.1(f); *id*. § 1292.1(a)(1).

But according to the findings in the Orders on appeal, Defendant does not practice in North Carolina courts. In addition, while the Order of Discipline disbars Defendant, the Order on Motion for Relief specifically denied Defendant's Motion for Relief from Judgment and did not change the requirements of the Order of Discipline. The finding of fact regarding Defendant's "interpretation" of the Order of Discipline leaves us wondering exactly what it would mean for Defendant to shut down his "presentation and practice" in North Carolina while still being allowed to practice in the federal immigration court in Charlotte when – according to the findings of fact – he practices *only* in the federal immigration court in Charlotte.

The State Bar argues interpreting Section 84-28 to mean the State Bar only has disciplinary jurisdiction over attorneys admitted to practice in North Carolina would "render[ ] Section 84-23 surplusage."

> It is well established that a statute must be considered as a whole and construed, if possible, so that none of its provisions shall be rendered useless or redundant. It is presumed that the legislature intended each portion to be given full effect and did not intend any provision to be mere surplusage.

*Porsh Builders, Inc. v. City of Winston-Salem*, 302 N.C. 550, 556, 276 S.E.2d 443, 447 (1981) (citation omitted). But our interpretation would not render Section 84-23 surplusage since the general grant of authority would remain unaffected. The

Council would still have general authority to "administer this Article," and one of the provisions of "this Article" is Section 84-28, so the State Bar has the authority to "administer" Section 84-28 by exercising its "disciplinary jurisdiction" under Section 84-28. *See* N.C. Gen. Stat. § 84-28. The State Bar has the general authority to "take actions that are necessary to ensure the competence of lawyers and State Bar certified paralegals; formulate and adopt rules of professional ethics and conduct; [and] investigate and prosecute matters of professional misconduct[.]" N.C. Gen. Stat. § 84-23(a). As Defendant notes in his reply brief, Section 84-23 does not use the word "jurisdiction." We disagree with the State Bar that interpreting the statutes in this way would render Section 84-23 surplusage. *See Porsh Builders, Inc.*, 302 N.C. at 556, 276 S.E.2d at 447.

The State Bar also contends that if we interpret North Carolina General Statute Sections 84-23 and 84-28 to limit its disciplinary jurisdiction only to "attorney[s] admitted to practice law in this State[,]" this will create absurd and terrible consequences. One of these absurdities is that lawyers admitted *pro hac vice* would be "subject to the Rules *but not* to the State Bar's investigatory powers or the DHC's jurisdiction[.]" (Emphasis in original.) But *pro hac vice* admission is not the issue in this case, and the State Bar's argument is also simply not correct: Attorneys from other states who practice in North Carolina courts must be admitted *pro hac vice* under North Carolina General Statute Section 84-4.1, and an attorney who is admitted *pro hac vice* has subjected himself to the disciplinary jurisdiction of the

State Bar. *See Couch v. Priv. Diagnostic Clinic*, 146 N.C. App. 658, 670, 554 S.E.2d 356, 365 (2001) ("Under N.C. Gen.Stat. § 84-28, attorneys admitted to practice *pro hac vice* are subject to the same disciplinary jurisdiction of this State as are attorneys licensed to practice here. That statute provides that a violation of the Rules of Professional Conduct of this State 'shall be grounds for discipline,' including disbarment or 'suspension for a period up to but not exceeding five years.'" (citations and brackets omitted).

We also briefly note that this opinion does not address the statutory provisions addressing unauthorized practice of law in North Carolina, whether by a layperson or by an attorney licensed by another jurisdiction.[6] Under North Carolina General Statute Section 84-37, the State Bar is authorized to "inquire into and investigate any charges or complaints of (i) unauthorized or unlawful practice of law . . . by individuals who have not been certified in accordance with the rules adopted by the North Carolina State Bar." N.C. Gen. Stat. § 84-37 (2023). The unauthorized practice of law is forbidden by statute. *See* N.C. Gen. Stat. § 84-4 ("Persons other than members of State Bar prohibited from practicing law."); *see also* N.C. Gen. Stat. § 84-7 (2023) ("District attorneys, upon application, to bring injunction or criminal proceedings."). Any person "who is damaged by" the unauthorized practice of law is

---

[6] The State Bar also presents an argument regarding North Carolina Rule of Professional Conduct 5.5, which deals with unauthorized practice of law. We will not address Rule 5.5 since there is no issue of unauthorized practice of law in this case.

also "entitled to maintain a private cause of action to recover damages and reasonable attorneys' fees and other injunctive relief as ordered by court." N.C. Gen. Stat. § 84-10.1 (2023) ("Private cause of action for the unauthorized practice of law."). This opinion does not affect the protections available to citizens of this State who may be harmed by the unauthorized practice of law, but Defendant was not accused of unauthorized practice of law. He was certified to practice in the federal immigration court and limited his practice to that court.

The State Bar also contends that it would be absurd to interpret North Carolina General Statute Section 84-23 and 84-28 as limiting its disciplinary jurisdiction to "attorney[s] admitted to practice law in this State" because this would leave "a pocket of lawyers practicing law in North Carolina and representing North Carolinians" without being subject to disciplinary jurisdiction of the State Bar. This is correct, but that is what the plain language of Section 84-28 requires. *See* N.C. Gen. Stat. § 84-28. Defendant does not fall within the categories of professionals over which the State Bar has disciplinary jurisdiction under Section 84-28. He is a licensed attorney, but he is not licensed in North Carolina. He is not "admitted to practice law in this State." *Id.* He practices only in a federal court located in North Carolina. There are many federal courts in North Carolina, including the immigration court where Defendant practices. All federal courts, including the immigration court, have their own requirements for attorneys to be admitted to practice before the court. As the Order on Motion for Relief acknowledges in its

finding regarding Defendant's "interpretation" of the Order of Discipline, the procedures and practices of the federal courts are not subject to control by the State of North Carolina. Federal courts, and the admission of attorneys who practice in federal courts, are controlled by federal law.

To obtain jurisdiction over this "pocket of lawyers," the State Bar asks us to rewrite North Carolina General Statute Section 84-28 to apply to "any attorney admitted to practice law" *in any state* if the attorney practices in a federal court physically located in North Carolina or has an office in North Carolina for a federal practice. But this Court does not have the authority to rewrite the statute to cover this group of attorneys who practice only in federal court and are licensed by another state. Defendant is a member of and subject to discipline by the New York Bar. As an attorney practicing before the federal immigration court, Defendant is also subject to discipline by the Executive Office for Immigration Review. *See* 8 C.F.R. § 1003.1(d)(5) ("Discipline of practitioners and recognized organizations. The Board shall have the authority pursuant to § 1003.101 *et seq.* to impose sanctions upon practitioners who appear in a representative capacity before the Board, the Immigration Courts, or DHS, and upon recognized organizations.").

The State Bar notes that "[n]umerous courts have held that a state's disciplinary authority has jurisdiction to discipline—and even disbar—a lawyer who is not licensed in the state but is practicing in a federal tribunal or agency within the state." The State Bar argues that

> the federal immigration courts afford great significance to predicate discipline, reflecting the immigration courts' expectation that a state should be able to investigate and impose appropriate discipline upon an attorney practicing within its borders. The Board of Immigration Appeals (the "BIA") may impose sanctions on practitioners appearing before it (or before the immigration courts or Department of Homeland Security) for professional misconduct. 8 C.F.R. § 1003.1(d)(5) (2024). The BIA routinely looks to state disciplinary actions as a predicate for reciprocal discipline against its practitioners. 8 C.F.R. § 1003.103(a)(1). This is true *even when the practitioner is not licensed by the state imposing the predicate suspension or disbarment against him*.

(Emphasis in original). The State Bar notes as examples cases in which the BIA considered disciplinary actions against immigration attorneys by Colorado and Maryland, although the attorneys in those cases were not licensed in those states. *See People v. Hooker*, 318 P.3d 77 (Colo. 2013); *Att'y Grievance Comm'n of Md. v. Ndi*, 184 A.3d 25 (Md. 2018). It is true that the BIA may consider discipline imposed by a state as a factor in the federal disciplinary process, but the question before us is whether North Carolina's State Bar has jurisdiction to impose discipline on an attorney not licensed in this State who is practicing only in the federal court. The other states noted by the State Bar have different regulatory schemes for attorneys; for example, in Colorado and Maryland, and many other states, the state's appellate court has exclusive authority to regulate the practice of law. *See In re Wimmershoff*, 3 P.3d 417, 420 (Colo. 2000) ("The regulation of the practice of law, including the determination of a lawyer's compliance or noncompliance with the Code of

Professional Responsibility (such as Colo. RPC 1.5(a)), resides exclusively with this court."); *see In re Application of Kimmer*, 896 A.2d 1006, 1017 (Md. 2006) ("Therefore, it has been clear, since 1898, that the Court of Appeals has had exclusive jurisdiction over the regulation of, and admission to, the practice of law." (citations omitted)).  In other states, statutes or caselaw may support subject matter jurisdiction for disciplinary action as to attorneys not licensed in those states, but we are bound by North Carolina's statutes.

The State Bar also contends Defendant's "assumption that he cannot be disbarred because he was not admitted to practice in North Carolina misapprehends the broad public-protection function of attorney discipline."  We appreciate the "public-protection function of attorney discipline," but the extent of the disciplinary power granted to the State Bar by the General Assembly is a public policy matter. "Absent [a] constitutional restraint, questions as to public policy are for legislative determination." *Home Sec. Life Ins. Co. v. McDonald*, 277 N.C. 275, 285, 177 S.E.2d 291, 298 (1970) (citation omitted).  This Court's role is to interpret and apply the law as it is written.  If the General Assembly would like to expand the disciplinary jurisdiction of the State Bar to cover attorneys who are not admitted to practice in North Carolina, it may do so by statutory amendment, but this Court may not re-write the statutes.

## C. Jurisdiction Based on the Rules of Professional Conduct

The Order on Motion for Relief also concluded that the State Bar had subject

matter jurisdiction to discipline Defendant under Rule 8.5 of the Rules of Professional conduct. Rule 8.5 addresses "disciplinary authority [and] choice of law" and provides:

> (a) Disciplinary Authority. A lawyer admitted to practice in North Carolina is subject to the disciplinary authority of North Carolina, regardless of where the lawyer's conduct occurs. *A lawyer not admitted in North Carolina is also subject to the disciplinary authority of North Carolina if the lawyer renders or offers to render any legal services in North Carolina.* A lawyer may be subject to the disciplinary authority of both North Carolina and another jurisdiction for the same conduct.

N.C. R. Pro. Conduct 8.5(a) (emphasis added). Defendant contends "Rule 8.5 doesn't create disciplinary jurisdiction" over Defendant. Specifically, Defendant contends "the [State] Bar argued, and DHC agreed, that the [State] Bar had lawfully expanded its jurisdiction beyond the disciplinary jurisdiction statute through administrative rulemaking" and "[t]hat argument, however, runs counter to basic principles of administrative law." The State Bar argues it has jurisdiction over Defendant under Rule 8.5, and this rule is consistent with Chapter 84 since our Supreme Court "approved and caused [Rule 8.5] to go into effect after finding it consistent with Chapter 84." The State Bar's argument that our Supreme Court has already decided Rule 8.5 is consistent with Chapter 84 is based on North Carolina General Statute Section 84-21, which states

> The rules and regulations adopted by the Council under this Article may be amended by the Council from time to time in any manner not inconsistent with this Article. Copies of all rules and regulations and of all amendments adopted by the Council shall be certified to the Chief

> Justice of the Supreme Court of North Carolina, entered by the North Carolina Supreme Court upon its minutes, and published in the next ensuing number of the North Carolina Reports and in the North Carolina Administrative Code: Provided, that the court shall decline to have so entered upon its minutes any rules, regulations and amendments which in the opinion of the Chief Justice are inconsistent with this Article.

N.C. Gen. Stat. § 84-21(b) (2023).

The State Bar's argument turns on the meaning of rendering or offering to render "legal services in North Carolina." The State Bar's argument is based on the physical location of Defendant's practice in North Carolina, even if he only practices in federal court. The State Bar argues that based on Rule 8.5(b), by having an office in this State and representing clients who live in North Carolina, even if his practice was limited to federal immigration court, Defendant was "render[ing] or offer[ing] to render any legal services *in North Carolina*." (Emphasis added.) In other words, the State Bar argues that Defendant may appear in federal immigration court and represent clients there, but if he "establish[es] an office or other systematic and continuous presence in this jurisdiction for the practice of law" even in federal court only, he is "rendering legal services" *in North Carolina* and is subject to the disciplinary jurisdiction of the State Bar. *See* N.C. R. Pro. Conduct 5.5(b)(1); N.C. R. Pro. Conduct 8.5.

The State Bar's claim regarding its definition of the practice of law focuses on the *physical location* where Defendant, as an attorney, consults with clients, prepares

documents, or appears in a court, and not the subject matter or purpose of his work or the court he appears in. Yet the definition of the practice of law in North Carolina General Statute 84-2.1(a) does not mention the physical location where an attorney may meet with a client or do his work; it addresses the specific legal services performed for the purpose of advising a client or preparing documents or representing a client before a particular tribunal:

> The phrase "practice law" as used in this Chapter is defined to be performing any legal service for any other person, firm or corporation, with or without compensation, specifically including the preparation or aiding in the preparation of deeds, mortgages, wills, trust instruments, inventories, accounts or reports of guardians, trustees, administrators or executors, or preparing or aiding in the preparation of any petitions or orders in any probate or court proceeding; abstracting or passing upon titles, the preparation and filing of petitions for use in any court, including administrative tribunals and other judicial or quasi-judicial bodies, or assisting by advice, counsel, or otherwise in any legal work; and to advise or give opinion upon the legal rights of any person, firm or corporation: Provided, that the above reference to particular acts which are specifically included within the definition of the phrase "practice law" shall not be construed to limit the foregoing general definition of the term, but shall be construed to include the foregoing particular acts, as well as all other acts within the general definition.

N.C. Gen. Stat. § 84-2.1(a) (2023).

Here, the DHC found that Defendant "*practices law* in North Carolina, where he maintains a law office in Charlotte, North Carolina, and appears in federal immigration courts in Charlotte on behalf of his clients." (Emphasis added.) But

Defendant was *practicing* only in federal immigration court, although that court is in North Carolina and he maintained an office in Charlotte. To the extent that Rule 8.5 may purport to extend the disciplinary jurisdiction of the State Bar beyond "attorney[s] admitted to practice law in this State" to attorneys not admitted in North Carolina practicing only in a federal court simply because the attorney has a home or office in North Carolina, this Rule is not in accord with North Carolina General Statute Section 84-28. *See* N.C. R. Pro. Conduct 8.5(a); N.C. Gen. Stat. § 84-28. The State Bar has "disciplinary jurisdiction" over "attorney[s] admitted to practice law in this State" no matter where they live or where their offices are located or where they do their work. It does not have disciplinary jurisdiction over attorneys who are not admitted to practice in North Carolina and who practice *only* in federal court just because they may live in North Carolina or have an office in North Carolina.

Rule 8.5 does not change our analysis because the Rules of Professional Conduct cannot grant or expand the subject matter jurisdiction of the State Bar beyond the boundaries set by North Carolina General Statute Section 84-28. As we concluded above, North Carolina General Statute Section 84-28 only gives the DHC disciplinary jurisdiction over those attorneys admitted to practice in this State. *See* N.C. Gen. Stat. § 84-28.

We next address the State Bar's argument that since our Supreme Court allowed the rules to be "entered . . . upon its minutes," the rules have been found to be consistent with Chapter 84. N.C. Gen. Stat. § 84-21(b). Under Section 84-21, the

rules must be approved only by the Chief Justice. *See* N.C. Gen. Stat. § 84-21. And even if we assumed that the Chief Justice's decision to allow a rule to be "entered . . . upon [the Court's] minutes" could be considered as a form of approval of the rule, this approval is not a decision of the Supreme Court. The Chief Justice's action is part of the rule-making authority of the Supreme Court, which is distinct from the Supreme Court's authority to adjudicate disputed cases brought before the Supreme Court on appeal or petition for review from a lower court. A binding decision of the Supreme Court requires a vote of at least four of the seven justices. *See* N.C. Gen. Stat. § 7A-10 (2023) ("Four justices shall constitute a quorum for the transaction of the business of the court."). While we are bound by the *decisions* of our Supreme Court, *see Snipes v. TitleMax of Va., Inc.*, 285 N.C. App. 176, 184, 876 S.E.2d 864, 870 (2022) ("Of course, we are also bound by *decisions* of our Supreme Court and by prior panels of this Court" (emphasis added) (citations omitted)), the Chief Justice's approval of a rule is not a decision of the Supreme Court. Neither the Chief Justice nor the Supreme Court ruled on the disputed issue raised in this case of the State Bar's disciplinary jurisdiction over attorneys who are not admitted to practice in North Carolina and the interpretation of Sections 84-23 and 84-28 simply by the Chief Justice's approval of Rule 8.5.

More fundamentally, this Court and our Supreme Court have long concluded an administrative agency only has those powers given to it by statute. *See Rouse v. Forsyth Cnty. Dep't of Soc. Servs.*, 373 N.C. 400, 407, 838 S.E.2d 390, 395 (2020) ("[A]n

administrative agency has no power to promulgate rules and regulations which alter or add to the law it was set up to administer or which have the effect of substantive law." (citation and quotation marks omitted)); *see also Hart v. Thomasville Motors, Inc.*, 244 N.C. 84, 89, 92 S.E.2d 673, 677 (1956) ("The jurisdiction of the Industrial Commission in relation to the subject matter over which it may exercise authority is limited by the North Carolina Workmen's Compensation Act, and this jurisdiction can be enlarged or extended only by the General Assembly its creator."). While Defendant cites both *Rouse* and *Hart*, the State Bar does not address these cases and instead relies on its argument that Section 84-28 does not limit the DHC's jurisdiction and Rule 8.5 is valid since it was approved by the Chief Justice. But as both of those arguments fail, we agree with Defendant that since the General Assembly limited the DHC's disciplinary jurisdiction to "[a]ny attorney admitted to practice law in this State[,]" the State Bar cannot enlarge the DHC's jurisdiction via rulemaking. N.C. Gen. Stat. § 84-28. Based on this interpretation of the disciplinary jurisdiction of the State Bar under Section 84-28, we need not address Defendant's remaining arguments on appeal.

## IV. Conclusion

The DHC did not have subject matter jurisdiction over Defendant since North Carolina General Statute Section 84-28 limits its disciplinary jurisdiction to "[a]ny attorney *admitted to practice law in this State*" and Defendant is licensed in New York, not North Carolina, and limits his practice to federal immigration court. N.C.

Gen. Stat. § 84-28 (emphasis added). The more specific language in Section 84-28 controls over the more general grant of authority in Section 84-23. Further, Rule 8.5 of the Rules of Professional Conduct cannot confer subject matter jurisdiction over Defendant beyond the plain language of North Carolina General Statute Section 84-28. The DHC's Order of Discipline and Order on Motion for Relief are both reversed.

REVERSED.

Chief Judge DILLON and Judge CARPENTER concur.